## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN KELLY,

      Plaintiff,

      v.

AMAZON.COM, INC

      Defendant.

CIVIL ACTION NO. 3:22-cv-00821

(SAPORITO, M.J.)

## **MEMORANDUM**

The *pro se* plaintiff, Brian Kelly ("Kelly"), an author and publisher, filed a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania, on May 4, 2022, (Doc. 1-1) against Amazon.com, Inc. ("Amazon") pertaining to Amazon's termination of his Kindle Direct Publishing ("KDP") account in 2021. The action was timely removed to this court on May 24, 2022, by Amazon. On May 31, 2022, Amazon moved to compel arbitration and stay the action (Doc. 5) under the terms of an arbitration agreement.

Kelly filed a second, subsequent complaint in the Court of Common Pleas of Luzerne County, Pennsylvania, and Amazon removed it to this court, where it was docketed as Civil Action No. 3:22-cv-1083. Amazon similarly moved the court to compel arbitration and stay that action.

1

Because we concluded that both actions involve common questions of law and fact, we have consolidated the actions under Fed. R. Civ. P. 42(a).[1] (Doc. 17).

The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons that follow, we will grant the motion.

## I.    *Statement of Facts*

In his complaint, Kelly alleged that Amazon breached an implied contract with him to publish his books. His claims consist of five separate counts for breach of contract, unjust enrichment, fraudulent and deceptive business practices, conversion, and unlawful termination and cancellation. For relief, he seeks monetary damages in excess of $78,000,000 and punitive damages.

On May 31, 2022, Amazon filed a motion to compel arbitration and stay action. (Doc. 5). Attached to the motion is a declaration of Rebecca Hartley, a paralegal in the litigation and recovery group at Amazon. (Doc.

---

[1] In his submissions, Kelly argues that the second action is different because he commenced the second action after his contractual relationship with Amazon was terminated. This contention is meritless, and we see no need to expand upon it further.

5-2).[2] In its brief in support, Amazon, relying upon the Hartley declaration asserts that when Kelly created his KDP and CreateSpace accounts, as well as each time he published a title using his KDP account, he agreed to arbitrate any dispute. (Doc. 6). Amazon also contends that on April 16, 2016, Kelly created a KDP account by using his email address, bkelly@ptd.net, which requires authors of self-published works, like Kelly, to accept KDP Publishing Terms and Conditions ("KDP Terms" or "Terms") to create an account.[3] A registrant is required to click an "Agree" button when the Terms are presented to him on the webpage stating he accepts the displayed KDP Terms. Amazon maintains that Kelly could not have created his KDP account without clicking the "Agree" button, indicating his consent to these KDP Terms. Included within the KDP Terms displayed, and to which Kelly agreed, was a mandatory arbitration provision, the pertinent terms of which provided

---

[2] The factual recitals herein regarding Amazon's position are from the Hartley declaration or Amazon's brief in support of its motion referencing the Hartley declaration. (Doc. 5-2; Doc. 6).

[3] Kelly created a second KDP account on July 2, 2016, using the e-mail address bkelly@kellyconsulting.com. To create this account, Kelly went through the same process that he went through in signing up the bkelly@ptd.net KDP account, clicking to agree to the identical set of KDP Terms. Kelly never published any books using this second bkelly@kellyconsulting.com KDP account. (Doc. 5-2, at 2 n. 1).

that: "Any dispute or claim relating in any way to this Agreement will be resolved by binding arbitration, rather than in court." (Doc. 5-4, at 11). Further, the arbitration provision required that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and federal law apply to the agreement, and that the arbitration will be conducted under the consumer rules of the American Arbitration Association.[4] (*Id.*; Doc. 6, at 9-10).

In addition to the KDP account, Kelly also established a CreateSpace account on April 16, 2016, using the email address bkelly@kellyconsulting.com. Like the KDP account, the CreateSpace registration required authors to accept the CreateSpace Services Agreement by clicking the "Agree" button. The CreateSpace terms similarly contained a mandatory arbitration agreement as recited above regarding the KDP Terms.

Finally, each time Kelly published a title using his KDP account, he agreed to arbitrate and dispute. By clicking "Publish," Kelly agreed to the KDP terms and conditions.

---

[4] The applicable document references the AAA's website and telephone number where its rules are made available. (Doc. 5-6 ¶15).

Amazon removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. Amazon maintains that all the claims made by Kelly are subject to arbitration under the arbitration provision and they fall within its scope. Amazon has moved to compel arbitration and stay action under the FAA, 9 U.S.C. § 2

In his brief in opposition to the motion,[5] Kelly raises three arguments. First, he contends that the agreement is "procedurally unconscionable" because he never saw the arbitration provision; he otherwise provides no basis for this unconscionability argument. Second, Kelly asserts that Amazon waived the right to arbitrate by removing the case to federal court. Third, Kelly complains about Amazon's conduct in terminating his KDP account. (Doc. 9). The motion has been fully briefed and is ripe for disposition.

## II. *Legal Standards*

The FAA provides that, in any contract involving interstate

---

[5] Kelly titles his response in opposition as "Brief" and on the bottom left-hand portion of each page of the document he inserted "ARBITRATION OPPOSITION BRIEF." We are obligated to liberally construe the filings of *pro se* litigants. *See generally Mala v Crown Bay Marina, Inc.*, 704 F.3d 239, 244-46 (3d Cir. 2013). Accordingly, we construe this document as Kelly's brief in opposition to the motion.

commerce, a provision in which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Because FAA provisions are mandatory, courts must compel arbitration when a valid arbitration agreement exists." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001). Because "[a]rbitration is a matter of contract between the parties," a judicial mandate to arbitrate must be predicated upon the parties' consent. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 (3d Cir.1980). The FAA enables the enforcement of a contract to arbitrate, but requires that a court shall be "satisfied that the making of the agreement for arbitration . . . is not in issue" before it orders arbitration. 9 U.S.C. § 4.

When deciding a motion to compel arbitration, a district court may rely either upon the standards governing motions to dismiss under Fed. R. Civ. P. 12(b)(6) or the standards governing motions for summary judgment supplied by Fed. R. Civ. P. 56. *Guidotti v. Legal Helpers Debt Resolution LLC*, 716 F.3d 764, 771-76 (3d Cir. 2013). Under *Guidotti*, the Third Circuit has provided guidance as to which standard may be appropriate under the given circumstances in a particular case as follows:

> When it is apparent, based on the face of the complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the questions of arbitrability before a court entertains further briefing on the question.

*Id.* at 776 (citation and internal quotation marks omitted). Despite the length of the complaint, it is devoid of any reference to the arbitration provision. Nevertheless, Amazon attached the Hartley declaration and documents to its motion. Kelly, in his opposition brief, responded but did not attach any documents.[6] Accordingly, the Rule 56 standard is appropriate to resolve the motion pending before this court. *See Madoner v. Educ. Mgmt. Corp.* 18 F. Supp. 3d 652, 658 (W.D. Pa. 2014).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[6] The substantial majority of Kelly's opposition brief does not address the issues before the court.

Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S., at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52.

## III.  Discussion

On the basis of the written submissions of the parties, we are asked

to decide whether: (1) the arbitration provision exists, and (2) if so, whether the facts alleged by Kelly in the complaint fall within the scope of the arbitration provision.

In deciding the issues before us, we are guided by the following rules. The FAA provides, in part, as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. It is undisputed that the agreement containing the arbitration provision evidences a transaction involving commerce.

The FAA "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Glover ex rel. Glover v. Darway Elder Care Rehab. Ctr.*, Civil No. 4:13-cv-1874, 2014 WL 931459, at *5 (M.D. Pa. Feb. 4, 2014); *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009). Congress enacted the FAA in order "to overrule the judiciary's long

standing reluctance to enforce agreements to arbitrate and its refusal to put such agreements on the same footing as other contracts, and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (citations omitted). Because arbitration is a contractual matter, prior to compelling arbitration under the FAA, a court must first determine that (1) an enforceable agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement. *Id.*; *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998). "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The scope of the state contract law is the type of matter in which the federal court must apply the law of the state. *Northern Health Facilities v. Batz*, 993 F. Supp. 2d 485, 494 (M.D. Pa. 2014).

### *(a)  The arbitration provision is enforceable*

To determine whether the parties agreed to arbitrate, we turn to "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). It is well established that the FAA reflects a "strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). But this presumption in favor of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). Generally, a court can only determine *whether* state law provides grounds for arbitration by deciding *what* state law applies using the rules of the forum state. *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021).

As a federal court sitting in diversity, we are required to apply the choice-of-law rules of Pennsylvania, the forum where we sit. *Klaxon Co. v. Stentor Mfg. Co.*, 313 U.S. 487, 496 (1941). Amazon, which is headquartered in the State of Washington, argues that Washington's laws should apply to our analysis. Kelly, who resides in Pennsylvania,

has taken no position on the issue. Thus, we will apply Washington law. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) (holding that parties may forfeit or waive choice-of-law issues); *see also Emrit v. PNC Bank*, No. 12-1334, 2022 WL 4820306, at *2 n.3 (3d Cir. Oct. 3, 2022) (per curiam) (same).

As our sister court in Washington State has acknowledged, "although online commerce has presented courts with new challenges, traditional principles of contract law still apply." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). Under Washington law, "[a] contract is formed when mutual assent exists, which generally consists of offer and acceptance." *Id.* (citing *Weiss v. Lonnquist*, 224 P.3d 787, 792 (Wash. App. Ct. 2009)). "Like many states, Washington does not allow parties to shirk contractual obligations if they had actual or constructive notice of the provisions." *Id.* (citing *W. Consultants, Inc. v. Davis*, 310 P.3d 824, 827–28 (Wash. Ct. App. 2013). "In the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of the service agreement." *Id.* (citing *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1037 (W.D. Wash. 2018)).

Kelly contends that he never saw the arbitration provision, and that the only contract between him and Amazon was an "implied" contract based upon the parties' relationship. But, as we have set forth above, Amazon has adduced unrebutted evidence that Kelly could not have registered his multiple accounts or published his hundreds of works without first being presented with the KDP Terms and clicking on the "Agree" button—once for *each* account or publication—to affirmatively indicate his assent to the KDP Terms.

As the *Wilson* court has explained:

> Online contracts fall into two broad categories. Clickwrap agreements require users to affirmatively assent to the terms of use before they can access the website and its services. Browsewrap agreements do not require the user to take any affirmative action to assent to the website terms. In some situations, a user may not even know a website has a user agreement.

*Wilson*, 944 F.3d at 1220 (citations omitted). Based on the record before us, it is beyond cavil that the KDP Terms constitute a clickwrap agreement. The KDP Terms, including the arbitration provision at issue, were displayed to Kelly, and he affirmatively assented to those terms not once, but hundreds of times. Kelly has failed to adduce any evidence to the contrary.

13

Under Washington law, clicking on an "agree" button such as this is sufficient to constitute assent for the purpose of contract formation. *See Hauenstein v. Softwrap Ltd.*, No. C07-0572MJP, 2007 WL 2404624, at *3 (W.D. Wash. Aug. 17, 2007); *cf. Tater v. OANDA Corp.*, Case No. C19-0158JLR, 2019 WL 4597517, at *7 n.6 (W.D. Wash. Sept. 23, 2019) ("The fact that the [particular] clause was contained in a click through form contract has no bearing on its enforceability.").

Accordingly, Kelly has failed to demonstrate a genuine dispute of fact with respect to the issue of his assent to the KDP Terms, including the arbitration provision at issue.

### (b) Unconscionability

The plaintiff has made a cursory argument that the arbitration provision is unconscionable because the provision was never shown to him. As noted above, however, Amazon has adduced evidence that the KDP Terms, including the arbitration provision at issue, were displayed to him hundreds of times—once for each account he registered and once for each work he published—and he affirmatively assented to these terms on each of these hundreds of occasions. The plaintiff has failed to provide any other facts or argument to support his unconscionability argument.

14

*See generally Hauenstein*, 2007 WL 2404624, at *3–*5 (considering unconscionability of clickwrap agreement under Washington law).

### (c)  Waiver of arbitration

The plaintiff has made a cursory argument that Amazon has waived its right to arbitrate by removing this action from state court to federal court. But the mere removal of a lawsuit from state court to federal court simply does not waive a contractual right to arbitration. *Grimm v. First Nat'l Bank of Pa.*, 578 F. Supp. 2d 785, 796 (W.D. Pa. 2008); *accord Martin v. Discover Bank*, Civil Action No. 12-2469, 2012 WL 6197992, at *3 (E.D. Pa. Dec. 3, 2012); *cf. Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 289–290 (3d Cir. 2010) (finding no waiver of right to remove lawsuit absent clear and unambiguous language in arbitration agreement).

### (d)  Scope of the Agreement

The arbitration provision specifies that the AAA will conduct the arbitration "under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes." (Doc. 5-6 ¶15). These rules (the "AAA rules") state that "[t]he arbitrator shall have the power to rule on . . . any objections with respect to the existence, scope, or validity of

15

the arbitration agreement or to the arbitrability of any claim," as well as "the power to determine the existence or validity of a contract of which an arbitration clause forms a part." AAA *Consumer Arbitration Rules*, Rule 14(a) and (b). As this court has previously recognized, "incorporation by reference of rules granting the arbitrator the authority to decide questions of arbitrability—especially the [AAA] rules—is clear and unmistakable evidence that the parties agreed to submit arbitrability questions to the arbitrators." *Ins. Newsnet.com, Inc. v. Pardine*, Civil Action No. 1:11-CV-00286, 2011 WL 3423081, at *3 (M.D. Pa. Aug. 4, 2011).

This is also consistent with the express language of the arbitration provision providing broadly that "*any* dispute or claim" shall be resolved by arbitration. *See Rosenberg v. Hotel Connections, Inc.*, Civil Action No. 21-4876 (ZNQ) (TJB), 2022 WL 7534445, at *6 (D.N.J. Oct. 13, 2022) (finding broadly worded provision requiring the submission of "all disputes" to arbitration expressed parties' intention to arbitrate the question of arbitrability); *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (arbitration as to arbitrability is appropriate

where agreement stated that "any and all controversies" shall be arbitrated).

Therefore, we find that, under the terms of the parties' agreement to arbitrate, the scope of that arbitration provision is an issue for the arbitrator to review.[7]

## IV.   Conclusion

Because we find that the parties clearly and unmistakably agreed to arbitrate Kelly's claims, we will grant Amazon's motion to compel arbitration and stay action (Doc. 5) and direct the parties to proceed to arbitration on the claims raised in Kelly's complaint.

An appropriate order follows.

Dated: December 12, 2022          *s/Joseph F. Saporito, Jr.*
                                  JOSEPH F. SAPORITO, JR.
                                  United States Magistrate Judge

---

[7] In his brief in opposition, Kelly stated that, if we grant Amazon's motion, he requests that the arbitration occur in Luzerne County, Pennsylvania. (Doc. 9 ¶ 3). But we remind Kelly that the arbitration provision states that he "may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the United States county where [he] live[s] or at another mutually agreed location." (Doc. 5-6 ¶ 15).